[Nos. 10552–7–II; 10710–4–II. Division Two. June 23, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. BLAINE
WHITEHEAD, *Appellant.*

*Thurman Lowans* and *Soriano, Soriano & Lowans,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Pamela Cameron* and *Warren Sharpe, Deputies,* for respondent.

WORSWICK, J.—Blaine Whitehead was charged with six counts of burglary and four counts of possession of stolen property. After his motion to sever was granted, he went to trial on four burglary charges and one possession charge, and was convicted on all counts. He later pleaded guilty, before a different judge, to an amended information charging three counts of burglary. Whitehead now appeals the sentences imposed by each judge. He also contends that the evidence at trial was insufficient to support the verdict as to the burglary charges. We reverse the sentence imposed following trial, and remand for resentencing. We affirm the convictions and the second sentence.

 Upon sentencing after trial, the court made four findings that it believed supported an exceptional sentence.[1] It is fair to say that these findings simply expressed

---

[1] I. FINDINGS OF FACT

(1) The Legislature enacted a sentencing grid in the Determinate Sentencing Act which arbitrarily stops when "criminal history" reaches 9 points.

(2) There is no relationship between the statutory maximum for Second Degree Burglary and the time set for a Second Degree Burglary with a "criminal history" of 9 points.

(3) The Legislative purpose of the Sentencing Reform Act is to treat persons who commit the same crimes, with similar "criminal histories", the same (within a narrow range), and to escalate the punishment as the number of crimes and/or criminal history of a defendant increases. It neither meets

the court's views as to omissions or deficiencies in the SRA having to do with criminal history, and suggested how the court believed these problems should be cured. None described an aggravating factor contemplated by RCW 9.94A.390, or amounted to a substantial and compelling reason justifying an exceptional sentence. RCW 9.94A-.120(2).

Criminal history cannot be used as an aggravating factor, because it is already included in the computation of the seriousness level of the offense. *State v. McAlpin,* 108 Wn.2d 458, 463, 740 P.2d 824 (1987).[2] *See also State v. Nordby,* 106 Wn.2d 514, 518 n.4, 723 P.2d 1117 (1986); *State v. Hartley,* 41 Wn. App. 669, 672, 705 P.2d 821, *review denied,* 104 Wn.2d 1028 (1985). The trial court's perception of a loophole in the law cannot afford the basis for an exceptional sentence. *State v. Gonzales,* 46 Wn. App. 388, 407–08, 731 P.2d 1101 (1986). The first sentence must be reversed and a sentence within the standard range imposed.

The second judge made four findings that Whitehead's attorney properly concedes justify an exceptional sentence under RCW 9.94A.120(2) and .390,[3] and then imposed a period of confinement within the standard range. However,

---

this statutory [*sic*] goal nor treats offenders equally to arbitrarily stop the "grid" at 9 when the determinate [*sic*] sentencing range thus imposed is maximum. For example under the SRA a 10, 11, 12, 13, etc. point offender is treated the same as a 9 point offender. Consequently the person with nine points is punished as severely as a person with more points.

(4) The top of the sentencing range for Level II crimes increases by 12 months between offenders with a criminal history of "8" and those with a criminal history of "9". Were the sentencing grid to be extended to "criminal histories of 10", the sentencing range would likely increase by 12 additional months or more based upon the observable pattern of the Sentencing Reform Act Grid.

[2]Contrary to the trial court's findings, the sentencing grid does not "stop" at 9 points. RCW 9.94A.310, prescribing the grid, says "9 *or more*." (Italics ours.)

[3]1. The offenses of defendant occurring from January 1, 1986, through September 20, 1986, were a series of offenses involving multiple victims with actual monetary loss substantially greater than typical for the offenses, occurring over a

the sentence was made consecutive to that imposed by the first judge. Whitehead contends that the consecutive sentence was error. We disagree.

Under the SRA, consecutive sentences for multiple *current* offenses are justifiable only as "an" exceptional sentence. RCW 9.94A.400(1)(a). *Cf. In re Irwin*, 110 Wn.2d 175, 181, 751 P.2d 289 (1988).[4] The real issue in this case,

---

lengthy period of time, and involved a higher degree of sophistication than is normal for these offenses, and such to suggest that he is a "career criminal".

2. If defendant had been sentenced for all offenses in this cause number together, he would have a criminal history score of 17.

3. Defendant has exhibited a behavior pattern which makes him a danger to the community.

4. The imposition of concurrent sentences for these offenses with the crimes for which he was sentenced on December 2, 1986, herein, would be clearly too lenient in light of the purposes enumerated in RCW 9.94A.010(1), (2), (3), (4).

[4] RCW 9.94A.400(1)(a) provides in part:
Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.120 and 9.94A.390(2)(e) or any other provision of RCW 9.94A.390. . . .
The full text of this section makes it apparent that the statute contemplates the imposition of consecutive sentences by the same judge.
Unlike RCW 9.94A.400(1)(a), section .400(3) allows consecutive sentences that are not justified as exceptional sentences. The precise circumstances for the application of .400(3) are not clear. It has been suggested that .400(3) applies to convictions obtained in proceedings separated by time. *State v. Bates*, 51 Wn. App. 251, 253–54, 752 P.2d 1360 (1988), distinguishing *State v. Stark*, 48 Wn. App. 245, 738 P.2d 684, *review denied*, 109 Wn.2d 1003 (1987) and *State v. Huntley*, 45 Wn. App. 658, 726 P.2d 1254 (1986). It has also been suggested that .400(3) applies *inter alia*, where a defendant has convictions from different jurisdictions. (Washington Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* II–53, II–54 (1986)).
Significantly, .400(1)(a) was amended in 1986, 1987 and 1988 to its present form prescribing the sentencing method for *current* offenses. Laws of 1986, ch. 257, § 28; Laws of 1987, ch. 456, § 5; Laws of 1988, ch. 143, § 24, ch. 157, § 5. Compare Laws of 1984, ch. 209, § 25. Thus, it would appear that the timing of the offenses, not of the proceedings, is determinative.
Here, all offenses were "current," as evidenced by the prosecutor's decision to charge them all in one information. The proceedings were separate only because of the severance.
Whitehead's equal protection argument would have force if the statute was interpreted as allowing consecutive nonexceptional sentences under .400(3) for current offenses imposed in separate proceedings. Such an interpretation should be avoided. *State v. Reyes*, 104 Wn.2d 35, 700 P.2d 1155 (1985).

then, is whether valid reasons supported an exceptional sentence by the second judge. Inasmuch as it is apparent—and conceded—that the sentence was so supported, we need not go further.

We find no merit in Whitehead's contention that consecutive sentences here denied him equal protection of the law. Having found justification for the second judge's imposition of an exceptional sentence, our next proper inquiry is whether the total of sentences to be served (about double the standard range had the sentences been concurrent, following the required resentencing by the first judge), will amount to a clearly excessive penalty.[5] It will not.

▬ Because of the extent and nature of Whitehead's criminal activity, the sophistication employed, and the threat of repeated criminality that he represents, all of which are referred to in the second judge's findings, we cannot say that no reasonable judge would have inflicted this penalty. *State v. Oxborrow,* 106 Wn.2d 525, 723 P.2d 1123 (1986).

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

REED, C.J., and PETRICH, J., concur.

---

[5]Whitehead raised this issue obliquely, but in a manner sufficient to justify our review. RAP 1.2(a).