[No. 17269-4-III.   Division Three.   May 18, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. JOSE LOPEZ SERRANO, *Appellant*.

702

*Jose Lopez Serrano*, pro se.
*Suzanne Lee Elliott*, for appellant.
*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Lauri M. Boyd, Deputy*, for respondent.

KATO, J. — Jose Lopez Serrano appeals his convictions and sentence for second degree murder and second degree

unlawful possession of a firearm. He raises several issues related to the trial court's deadly weapon instruction and special verdict form. Pro se, he contends the trial court unlawfully failed to provide a certified interpreter, trial counsel was constitutionally ineffective, and the sentencing court improperly questioned him and ordered an unjustified exceptional sentence. We affirm the convictions but remand for entry of a sentence within the standard range.

Froilan Gutierrez was shot five times while he was working in an apple orchard on June 28, 1997. His co-worker, Juan Antonio Ramos Lopez, heard the shots from nearby and returned to see Mr. Serrano leaving in a car.[1] Mr. Serrano was arrested later that day and was charged with first degree murder and second degree unlawful possession of a firearm. A jury found him guilty of the firearm crime[2] and the lesser included crime of second degree murder. On a special verdict form, the jury also found Mr. Serrano was armed with a deadly weapon at the time of the murder. The court ordered an exceptional sentence of 360 months, 66 months above the top of the standard range.[3]

Before addressing the sentencing issues, we first briefly address Mr. Serrano's pro se contention that reversal is required because a certified interpreter was not used at trial. As the trial began, the court had the following colloquy:

THE COURT: We're here to begin the case of State versus Jose Lopez Serrano.

Can you hear the interpreter, Mr. Serrano?

THE INTERPRETER: I'm the interpreter, Your Honor.

THE COURT: Right. Is everything working? And, I'm sorry, I have not met you before. Your name, sir?

---

[1] Evidence at trial suggested Mr. Gutierrez had been having an affair with Mr. Serrano's wife.

[2] The parties stipulated that at the time of the homicide Mr. Serrano was "ineligible as a matter of law to own or possess a firearm."

[3] The standard sentencing range (including a 60-month enhancement for use of a firearm) was 194-294 months.

THE INTERPRETER: Humberto Gonzales.

THE COURT: All right. Certified or qualified?

THE INTERPRETER: Qualified, Your Honor.

THE COURT: Thank you.

■ When a non-English-speaking person is a party to a legal proceeding, a "certified" interpreter must be appointed unless good cause is shown. RCW 2.43.030(1)(b); *see State v. Pham*, 75 Wn. App. 626, 633, 879 P.2d 321 (1994), *review denied*, 126 Wn.2d 1002 (1995). Mr. Serrano contends he is entitled to a new trial because the interpreter at his trial was "qualified" but not "certified." Because defense counsel did not object at trial, he may not raise the issue for the first time on appeal unless the error was of constitutional magnitude. *See* RAP 2.5(a)(3).

A defendant has a constitutional right to "a competent interpreter, [but] not necessarily a certified interpreter." *Pham*, 75 Wn. App. at 633. Nothing in the record suggests the interpreter in this case was incompetent. The record certainly does not support Mr. Serrano's allegation that the interpreter ordered him to answer as the interpreter directed. Nor is there any support for Mr. Serrano's allegation that he did not speak Spanish and thus was unable to understand the Spanish-speaking interpreter. The record indicates Mr. Serrano was aware of what was happening and was able to participate throughout the proceedings. Because there is no basis for Mr. Serrano's contention the interpreter was incompetent, he has no constitutional claim and may not raise the statutory issue for the first time on appeal.

■ Mr. Serrano also contends, however, that his attorney was constitutionally ineffective in failing to object to the uncertified interpreter. Because there is no indication the interpreter was incompetent, Mr. Serrano cannot establish he was prejudiced as required by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) and *State v. McFarland*, 127 Wn.2d 322, 899 P.2d 1251 (1995). There was no reversible error.

We now address the sentencing issues. Mr. Serrano first contends the 60-month sentence enhancement was unlawful because the jury instruction and special verdict form used the phrase "deadly weapon" rather than the term "firearm." The information charging Mr. Serrano with first degree murder contained the following special allegation:

> [N]otice is hereby given that it is alleged that during the commission of the crime above, you and/or an accomplice were armed with a firearm, to-wit: .22 caliber pistol as defined by RCW 9.41.010, 9.94A.310 and 9.94A.125 whereby under those statutory provisions certain sentencing enhancements are imposed.

At trial, the court instructed the jury on the elements of first degree murder, second degree murder (as a lesser included offense) and second degree possession of a firearm. Instruction 15 defined firearm as "a weapon or device from which a projectile may be fired by an explosive such as gunpowder." Instruction 18 provided:

> For purposes of a special verdict the State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon at the time of the commission of the crime of murder.
>
> A pistol, revolver, or any other firearm is a deadly weapon whether loaded or unloaded.

The jury answered the special verdict as follows:

> Was the defendant JOSE LOPEZ SERRANO armed with a deadly weapon at the time of the commission of the crime of murder?
>
> Answer: *Yes*

At the time of sentencing, the court entered a separate finding stating:

> The Court finds that on June 28, 1997, in Yakima County, State of Washington, that the defendant committed the crime of Second Degree Murder, and during the commission of that offense the defendant was armed with a firearm as defined in RCW 9.94A.125, 9.94A.310, 9.41.010, to wit: .22 caliber pistol.

The court enhanced Mr. Serrano's sentence by 60 months for use of a firearm.

The Sentencing Reform Act of 1981 (SRA) contains two provisions for enhancing sentences on the basis of the defendant's use of a weapon. The more general provision, RCW 9.94A.310(4), provides for various enhancements (depending on the class of the crime) if the offender was "armed with a deadly weapon as defined in this chapter other than a firearm as defined in RCW 9.41.010." A deadly weapon is defined as

> an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death. The following instruments are included in the term deadly weapon: Blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas.

RCW 9.94A.125.

A second, more specific provision provides for relatively longer enhancement periods if the defendant was "armed with a firearm as defined in RCW 9.41.010." RCW 9.94A-.310(3). For purposes of this provision, a firearm is defined as "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." RCW 9.41-.010(1).

Here, the information alleged Mr. Serrano was armed with a firearm, but it confusingly cited RCW 9.94A.125, which defines the phrase "deadly weapon." Adding to the confusion, jurors were instructed on the definitions of both "firearm"[4] and "deadly weapon," and the jury was required to find on a special verdict form whether Mr. Serrano was armed with a deadly weapon.

---

[4]Instruction 15, defining the term "firearm," apparently was necessary because that term was used in the instructions defining the crime of second degree unlawful possession of a firearm. There is no merit to the State's argument Instruction 15 somehow resolved the confusion.

The instructions at issue here are all correct statements of the law. The problem is that the State sought a sentence enhancement based on Mr. Serrano's use of a *firearm*, but the jury was required to decide instead whether he used a *deadly weapon*. The superior court apparently recognized this inconsistency at the time of sentencing and entered its own, more specific finding that Mr. Serrano was armed with a firearm. Mr. Serrano contends in part that the 60-month enhancement must be stricken because the information and the special verdict were inconsistent. *See State v. Smith*, 11 Wn. App. 216, 225, 521 P.2d 1197 (1974). But there was no inconsistency between the information's special allegation and the sentencing court's firearm enhancement under RCW 9.94A.310(3). The jury's determination that he was armed with a deadly weapon was simply meaningless.

The precise issue raised here is whether the court properly entered its own special firearm finding or whether the question was for the jury. Although the SRA expressly requires a jury finding on the question whether the defendant was armed with a *deadly weapon*, *see* RCW 9.94A.125, there is no corresponding jury requirement for a *firearm* finding. *State v. Meggyesy*, 90 Wn. App. 693, 708, 958 P.2d 319, *review denied*, 136 Wn.2d 1028 (1998). Mr. Serrano concedes his trial attorney failed to raise this issue at trial, but he contends nonetheless that he may raise it for the first time on appeal pursuant to RAP 2.5(a)(3) because it is an issue of constitutional magnitude. But a defendant does not have a constitutional right to a jury determination of a fact related to sentencing. *McMillan v. Pennsylvania*, 477 U.S. 79, 93, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986) (Sixth Amendment does not require jury sentencing when a statute makes weapon possession a sentencing factor); *State v. Thorne*, 129 Wn.2d 736, 782, 921 P.2d 514 (1996); *Meggyesy*, 90 Wn. App. at 708. The error, if any, was not of constitutional magnitude and may not be raised for the first time on appeal.

Finally, Mr. Serrano contends his trial counsel was

constitutionally ineffective in failing to object to the inapplicable jury instruction and special verdict form.[5] The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. *Strickland*, 466 U.S. 668; *State v. Thomas*, 109 Wn.2d 222, 743 P.2d 816 (1987). To establish counsel was deficient, a defendant must show that the attorney's performance fell below an objective standard of reasonableness and that the deficiency prejudiced the defendant. *McFarland*, 127 Wn.2d at 334-35. Assuming for these purposes that defense counsel's performance was deficient, Mr. Serrano suffered no prejudice. There was no question at trial that Mr. Gutierrez was shot with a firearm; the evidence overwhelmingly supports the sentencing court's finding. The error, if any, is not reversible.

Pro se, Mr. Serrano contends the sentencing court violated his rights to due process and equal protection of the laws by asking him if he still denied his involvement in the crime. At the sentencing hearing, the court asked Mr. Serrano if he wished to say anything. The following colloquy occurred:

> THE DEFENDANT: I don't have nothing else to say, Your Honor. The jury found me guilty, and you know that already. You can sentence me to whatever the law recommends. That's all I have to say.

> THE COURT: Do you deny that this crime occurred?

> [DEFENSE COUNSEL]: Your Honor, I'm going to object to that. I think Mr. Serrano is accepting the verdict of the jury and the process. If he has any appealable issues, he believes, then he can pursue them on the appellate level. But for him to make that statement at this time I think I'm going to advise— with the appellate process going on, I think I'm going to advise him not to answer that.

> THE COURT: Do you wish to answer that question, Mr. Serrano?

---

[5]In his pro se brief, Mr. Serrano also contends defense counsel was ineffective in failing to request a continuance to review the court's jury instructions. The record does not support his allegation that defense counsel was not permitted to review the instructions. The record shows defense counsel examined the court's instructions and was given the opportunity to object.

THE DEFENDANT: No.

██ ██ Before a court pronounces a sentence, a defendant must be allowed to make "arguments." RCW 9.94A.110. This right is derived from the common-law right of allocution. *State v. Crider*, 78 Wn. App. 849, 856, 899 P.2d 24 (1995). "Allocution is a plea for mercy; it is not intended to advance or dispute facts." *State v. Lord*, 117 Wn.2d 829, 897, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856 (1992); *see In re Personal Restraint of Benn*, 134 Wn.2d 868, 893, 952 P.2d 116 (1998) (only legitimate purpose for allocution is for defendant to express remorse and ask for mercy).

To the extent the sentencing court here sought to ascertain facts, its question in the context of Mr. Serrano's allocution was improper. Mr. Serrano did not invite the inquiry, and a court may not rely on a defendant's professed innocence as an aggravating factor to support an exceptional sentence. *See State v. Vermillion*, 66 Wn. App. 332, 348-49, 832 P.2d 95 (1992), *review denied*, 120 Wn.2d 1030 (1993). The court's question was improper.

A court may not use a defendant's silence as a basis for an exceptional sentence. *State v. Garibay*, 67 Wn. App. 773, 782, 841 P.2d 49 (1992), *abrogated on other grounds in State v. Moen*, 129 Wn.2d 535, 919 P.2d 69 (1996). However, there is no indication the court relied on Mr. Serrano's silence in ordering an exceptional sentence. There certainly is no support in the record that the sentencing judge became "enraged" and imposed the exceptional sentence in retaliation for Mr. Serrano's refusal to answer the question. The error here was harmless and the pertinent issue is whether the exceptional sentence itself was proper.

We now address that issue, which Mr. Serrano raises in his pro se brief.

The State urged the court to order a sentence at the top of the standard range. The court nevertheless ordered an exceptional sentence, observing:

> I find that the victim was, because of his physical location and work contact particularly, was significantly vulnerable. He

was shot five times. I find that that is deliberate cruelty. And lastly, it is clear that, despite whatever had happened between Serrano's wife and Gutierrez, that Mr. Serrano held himself out to be a friend or compadre, if you would, of Gutierrez and his coworker, finagled himself or introduced himself into the physical position or location where he could at that time shoot Mr. Gutierrez when he wasn't in a place to avoid or run away or do something, if anything was at all possible.

Clearly, whether we use the term position of trust to describe generally a relationship, either professional or personal, this is somewhat of a twist of it. So it is clear that Serrano was there because he used his friendship with the third person, and in part his acquaintanceship with Gutierrez, to put himself in a position where he decided to shoot and kill Mr. Gutierrez.

I don't know whether, you know, looking from my point of view, whether he premeditated this or it just occurred to him at that time. I'm more inclined to believe the latter from the evidence. I mean, I don't think the evidence was substantial enough that it would be a surprise to me that the jury didn't return a verdict of first degree murder. What the jury did I thought was consistent with what the evidence may have been, but it's clear that Mr. Serrano committed a crime that's really somewhat in between what I consider first degree murder and second degree murder. There isn't any real legal position between, but somewhere, at some point prior to the shooting, he had to have thought I am going to kill this man, picked up the gun or took it out of his pants or wherever it was, we do not know, advanced and shot this person when he was up off the ground in this mechanical device.

. . . .

I would say for the record that, should these findings not be found sufficient for an exceptional sentence, clearly the top of the range of 294 months is justified from the facts that occurred in this case, without any question. That is a no brainer, in my view.

The court then entered written findings as follows:

## II.

Froilan Gutierrez was in an orchard ape thinning apples at

the time that the defendant shot him. An "orchard ape" is a caged platform on a hydraulic lift, powered by a tractor. The cage was in the air at the time of the shooting and Froilan Gutierrez could not run or protect himself from the shots.

## III.

Jose Serrano shot Froilan Gutierrez from the back five times.

## IV.

Froilan Gutierrez and Juan Ramos were thinning apples at the White Orchards at the time of the shooting. The defendant, Jose Serrano, was an ex-employee of the orchard and cordially greeted both Juan Ramos and Froilan Gutierrez. Jose Serrano came into close physical proximity to Froilan Gutierrez by portraying himself as a friend.

The court's written conclusions were that Mr. Gutierrez was particularly vulnerable and was shot in a particularly cruel manner ("i.e., multiple shots (5)"). Also, the court concluded Mr. Serrano "abused the friendship that he had with Juan Ramos and the status of an ex-employee of White Orchards [and] [t]hat [he] used his position to put himself into a position to shoot and kill Froilan Gutierrez."

Under RCW 9.94A.210(4), there are three potential issues on review of an exceptional sentence. First, the defendant may challenge the factual basis of the court's reasons for imposing the sentence, under the "clearly erroneous" standard of review; second, the defendant may contest the legal justification of the court's reasons, which are reviewed as a matter of law; and third, the defendant may challenge the sentence as clearly too excessive or too lenient, which is reviewed under the "abuse of discretion" standard. *State v. Branch*, 129 Wn.2d 635, 645-46, 919 P.2d 1228 (1996); *State v. Johnson*, 124 Wn.2d 57, 65-66, 873 P.2d 514 (1994); *State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991).

Mr. Serrano concedes all three of the court's articulated reasons for the exceptional sentence are legally recognized.

He contends, however, that facts do not support the court's conclusions. The "clearly erroneous" standard of review applies.

■ RCW 9.94A.390(2)(b) provides that an exceptional sentence may be based on a finding the victim "was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health." Although the statutory provision appears to apply only to a victim's physical characteristics, some decisions have recognized the particular vulnerability factor may apply when other circumstances made it difficult or impossible for the victim to resist or avoid the criminal act. *See State v. Ross*, 71 Wn. App. 556, 565-66, 861 P.2d 473, 883 P.2d 329 (1993) (women alone in offices open to public), *review denied*, 123 Wn.2d 1019 (1994); *State v. Altum*, 47 Wn. App. 495, 502-03, 735 P.2d 1356 (woman stranded), *review denied*, 108 Wn.2d 1024 (1987), *overruled on other grounds in State v. Parker*, 132 Wn.2d 182, 937 P.2d 575 (1997); *see also State v. Cardenas*, 129 Wn.2d 1, 10-11, 914 P.2d 57 (1996) (pedestrian victim of vehicular assault); *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986) (pedestrian victim of vehicular assault); *but see State v. Batista*, 116 Wn.2d 777, 790 n.8, 808 P.2d 1141 (1991) (victims playing dice in open backyard of apartment not particularly vulnerable).

Whatever the nature of the victim's vulnerability, the vulnerability must be "a substantial factor in the accomplishment of the crime." *State v. Jackmon*, 55 Wn. App. 562, 566-67, 778 P.2d 1079 (1989). Here, although it may be true that Mr. Gutierrez was vulnerable because he was above the ground in an "orchard ape," the record does not suggest this vulnerability was a substantial factor in the shooting. The sentencing court's reliance on this factor was clearly erroneous.

■ ■ An exceptional sentence also may be justified if the defendant's conduct "manifested deliberate cruelty to the victim." RCW 9.94A.390(2)(a). "Deliberate cruelty consists of gratuitous violence, or other conduct which

inflicts physical, psychological or emotional pain as an end in itself." *State v. Strauss*, 54 Wn. App. 408, 418, 773 P.2d 898 (1989). The cruelty must be " 'of a kind not usually associated with the commission of the offense in question.' " *State v. Payne*, 45 Wn. App. 528, 531, 726 P.2d 997 (1986) (quoting *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn. 1981)); *see State v. Crane*, 116 Wn.2d 315, 334, 804 P.2d 10, *cert. denied*, 501 U.S. 1237 (1991).

Some Washington cases have upheld exceptional sentences on the basis of the number of wounds inflicted. *See, e.g., Ross*, 71 Wn. App. 556 (over 100 wounds); *State v. Drummer*, 54 Wn. App. 751, 775 P.2d 981 (1989) (stabbing 20 times); *State v. Harmon*, 50 Wn. App. 755, 750 P.2d 664 (stabbing/slicing 64 times), *review denied*, 110 Wn.2d 1033 (1988). In each of those cases, however, the sheer number of wounds demonstrated a cruelty not usually associated with the offenses. Mr. Serrano shot Mr. Gutierrez five times. This fact itself does not suggest he gratuitously inflicted pain as an end in itself. The sentencing court's reliance on this factor was clearly erroneous.

■ A defendant's abuse of a trust relationship may justify an exceptional sentence in economic and noneconomic offenses. RCW 9.94A.390(2)(d)(iv); *State v. Fisher*, 108 Wn.2d 419, 427, 739 P.2d 683 (1987). To justify reliance on this factor, the relationship need not be directly fiduciary or familial. *See State v. Quigg*, 72 Wn. App. 828, 842, 866 P.2d 655 (1994); *State v. Harding*, 62 Wn. App. 245, 248-49, 813 P.2d 1259, *review denied*, 118 Wn.2d 1003 (1991). The nature and duration of the relationship are important factors. *See Fisher*, 108 Wn.2d at 427; *State v. J.S.*, 70 Wn. App. 659, 665, 855 P.2d 280 (1993).

In *Fisher*, the child victim had asked the defendant to accompany him to the restroom on several occasions because his father was not there. *Fisher* 108 Wn.2d at 426. Noting this was evidence of a trust relationship, the court stated in dictum: "A relationship extending over a longer period of time, or one within the same household, would indicate a more significant trust relationship, such that the of-

fender's abuse of that relationship would be a more substantial reason for imposing an exceptional sentence." *Id.* at 427.

In *State v. Grewe*, 117 Wn.2d 211, 813 P.2d 1238 (1991), the defendant knew the victim for about four months before the offense. During that time, the victim was a frequent visitor in his home where she used his computer and played the piano. The court held the defendant had established a relationship of trust by luring the victim to his house. *Id.* at 219. But it observed that courts have "guarded against attempts to render the definition of a position of trust overly inclusive." *Id.*

The defendant in *State v. Stuhr*, 58 Wn. App. 660, 794 P.2d 1297 (1990), *review denied*, 116 Wn.2d 1005 (1991), lived with the 80-year-old victim who was blind in one eye. The court held there was no evidence that the defendant used his status as a houseguest to facilitate the murder. *Id.* at 663. The court noted that the defendant was not acting as the victim's caretaker and the victim had not "been left alone with him because the victim or his family reposed some particular trust or confidence in [the defendant]." *Id.* The court further observed that if it were to conclude that "this tenuous, transient relationship equates with enjoying a position of trust and confidence, it is difficult to say where the line could be drawn. Any relationship that provides an opportunity for the commission of this type of crime could not be excluded." *Id.*

Here, the trial court apparently concluded that Mr. Serrano's status as friend and former co-worker of Mr. Gutierrez established a trust relationship. But these connections do not establish there was a particular trust or confidence between the men. The relationship at best was tenuous and transient. The sentencing court's conclusion would justify an exceptional sentence in any crime in which the victim is an acquaintance or co-worker of the defendant. Because there was no evidence of a trust relationship here, the sentencing court's reliance on this factor was clearly erroneous.

A sentencing court's disagreement with the law or the jury's verdict cannot be a basis for an exceptional sentence. *State v. Elsberry*, 69 Wn. App. 793, 850 P.2d 590 (1993), *overruled on other grounds by State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995); *State v. Whitehead*, 51 Wn. App. 841, 843, 755 P.2d 852 (1988); *State v. Gonzales*, 46 Wn. App. 388, 407-08, 731 P.2d 1101 (1986). The court's oral decision here strongly suggests the court disagreed with the jury's verdict, the law, or both. The exceptional sentence should be reversed and the matter should be remanded for resentencing.

We affirm the convictions but remand for resentencing within the standard range.

SCHULTHEIS, C.J., and BROWN, J., concur.

Review denied at 138 Wn.2d 1020 (1999).