108 P.3d 1233 (2005)
STATE of Washington, Respondent,
v.
Michael J.L. CURTIS, Appellant.
No. 30495-3-II.
Court of Appeals of Washington, Division 2.
March 15, 2005.
*1234 James Lewis Reese, Attorney at Law, Port Orchard, WA, for Appellant.
Randall Avery Sutton, Kitsap Co. Prosecutor's Office, Port Orchard, WA, for Respondent.
ARMSTRONG, J.
¶ 1 The trial court gave Michael Curtis an exceptional sentence after he pleaded guilty to two counts of second degree child molestation. After a commissioner of this court affirmed Curtis's sentence, the United States Supreme Court decided Blakely v. Washington, ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403, reh'g denied, ___ U.S. ___, 125 S.Ct. 21, 159 L.Ed.2d 851 (2004); Curtis moved for reconsideration. The State argues that Curtis admitted the facts supporting his sentence during allocution and that even if he did not, the error was harmless. We hold that Curtis's statements during allocution were not admissions and that Blakely violations are structural errors requiring automatic *1235 reversal. Accordingly, we reverse Curtis's sentence and remand for resentencing.

FACTS
¶ 2 The State charged Curtis with two counts of second degree child molestation by amended information on April 21, 2003. Count one alleged that Curtis molested M.M.C. (birthdate 6/1/87) and count two alleged that Curtis molested M.M.C.'s sister, B.J.H. (birthdate 2/26/84); both counts were alleged to have occurred between February 26, 1997, and May 31, 2001. Curtis pleaded guilty to both counts on April 25, 2003. The plea agreement recommended a standard range sentence of 36 months on each count, to run concurrently.
¶ 3 The trial court considered the presentence investigation report (PSI); the victim impact statements; and the oral statements by the victims, their mother and aunt, Curtis, and Curtis's stepdaughter. At sentencing, Curtis said:
First off, I would like to say how profoundly sorry I am to my two victims. They trusted me as a friend and I used their trust and their friendship for my own twisted and selfish needs. I'm truly sorry for the pain and damage I have caused you. Don't let someone like me stop you from having a fruitful and happy life.
To [the victim's mother and stepfather], you were good friends and neighbors  [at this point, Curtis's attorney began reading his statement for him].
You were good friends and neighbors and you didn't deserve what I did to you and your family. You trusted me and I betrayed that trust.
Report of Proceedings (RP) (May 27, 2003) at 15.[1]
¶ 4 The trial court imposed a 62-month exceptional sentence based on Curtis's abuse of his position of trust as to both victims and on an ongoing pattern of sexual abuse of M.M.C. The court stated that it would impose the same sentence even if only one of these grounds was valid.

ANALYSIS
¶ 5 The State concedes that Blakely applies. But it argues that Curtis admitted the facts the court relied on when it imposed his exceptional sentence. In the alternative, the State argues that any Blakely error was harmless.

I. Admissions
¶ 6 In Blakely, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely, 124 S.Ct. at 2536. "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts `which the law makes essential to the punishment' and the judge exceeds his proper authority." Blakely, 124 S.Ct. at 2537 (quoting 1 J. BISHOP, CRIMINAL PROCEDURE, ch. 6, § 87, at 55 (2d ed. 1872)). The statutory maximum "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 124 S.Ct. at 2537 (emphasis in original).
¶ 7 The court based Curtis's exceptional sentence on his abuse of a position of trust as to both victims and an ongoing pattern of sexual abuse as to M.M.C. But Curtis did not admit facts that would support an exceptional sentence when he pleaded guilty. Rather, the State relies on the statement Curtis and his attorney read at sentencing and on Curtis's statements to the PSI writer. Thus, we must decide whether Curtis's unsworn, uncontroverted statements during his plea allocution constitute an admission under Blakely.
¶ 8 In discussing a defendant's admissions, Blakely cites Apprendi v. New Jersey, 530 U.S. 466, 488, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which in turn discussed Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). In Almendarez-Torres, the defendant pleaded guilty to a federal immigration crime with a *1236 maximum sentence of two years. At his plea hearing, the defendant admitted that the government had deported him once already after he had been convicted of three aggravated felonies. Almendarez-Torres, 523 U.S. at 227-30, 118 S.Ct. 1219. Because of this, he was subject to an exceptional sentence in excess of two years. Almendarez-Torres, 523 U.S. at 227, 118 S.Ct. 1219. Explaining why it approved of this procedure in Almendarez-Torres, the Apprendi Court said:
Because [the defendant] had admitted the three earlier convictions for aggravated felonies  all of which had been entered pursuant to proceedings with substantial procedural safeguards of their own  no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court.
Apprendi, 530 U.S. at 488, 120 S.Ct. 2348.
¶ 9 Here, Curtis made his purported admissions during a sentencing allocution, not at his plea hearing. In Washington, the defendant has a statutory right to allocute. In re Pers. Restraint of Echeverria, 141 Wash.2d 323, 335, 6 P.3d 573 (2000). Under the current allocution statute, the court must allow argument from the defendant "as to the sentence to be imposed." RCW 9.94A.500(1). But "[a]llocution is a plea for mercy; it is not intended to advance or dispute facts." State v. Lord, 117 Wash.2d 829, 897, 822 P.2d 177 (1991); see also In re Pers. Restraint of Benn, 134 Wash.2d 868, 893, 952 P.2d 116 (1998) (in penalty phase of capital case, only legitimate purpose of defendant's allocation was to express remorse and ask for mercy).
¶ 10 In State v. Serrano, 95 Wash.App. 700, 708-09, 977 P.2d 47 (1999), the court interrupted the defendant's allocution and asked whether he was denying that the crime occurred. On advice of counsel, the defendant refused to answer. Serrano, 95 Wash.App. at 708-09, 977 P.2d 47. Division Three held that "[t]o the extent the sentencing court here sought to ascertain facts, its question in the context of [the defendant's] allocution was improper." Serrano, 95 Wash.App. at 709, 977 P.2d 47. But the court concluded that the error was harmless because the judge had not relied on the defendant's silence in imposing an exceptional sentence. Serrano, 95 Wash.App. at 709, 977 P.2d 47. Here, however, the State asks us to uphold Curtis's exceptional sentence because of his allocution statements.
¶ 11 Statements during allocution may be treated as factual testimony in some cases. In Lord, the allocuting defendant denied making statements to jailhouse informants and gave his version of what he did the day the victim was murdered. Lord, 117 Wash.2d at 899, 822 P.2d 177. The court held that the trial court properly allowed the State to cross-examine the defendant because he had used allocution to present evidence as to the crime. Lord, 117 Wash.2d at 899-900, 822 P.2d 177; see also Benn, 134 Wash.2d at 893, 952 P.2d 116 (no ineffective assistance where counsel turned away from defendant when defendant used allocution to give unsworn testimony in support of self-defense claim). Curtis, however, did not offer facts as to whether he committed the crimes. He apologized to his victims and acknowledged his wrongdoing; he sought mercy, not to avoid his responsibility for the crimes.
¶ 12 Moreover, although a defendant may waive his Sixth Amendment right to have a jury find the facts necessary to support an exceptional sentence, the waiver must be knowing, voluntary, and intelligent. State v. Borboa, 124 Wash.App. 779, 102 P.3d 183, 190 (2004). Curtis allocuted before Blakely was decided. He did not know at his sentencing that the State was obligated to prove to a jury beyond a reasonable doubt the exceptional sentence facts. Thus, he could not knowingly, voluntarily, and intelligently waive his Blakely rights. Borboa, 102 P.3d at 190.

II. Harmless Error
¶ 13 The State argues that the Blakely violation is harmless error under Neder v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). We recently held, however, that Blakely error is structural, not subject to harmless error analysis. State v. Fero, 125 Wash.App. 84, 104 P.3d 49, 58 (2005).

*1237 III. Remand
¶ 14 We vacate Curtis's exceptional sentence and remand for resentencing. If the State pursues an exceptional sentence, it must prove the supporting facts to a jury beyond a reasonable doubt. State v. Harris, 123 Wash.App. 906, 910, 99 P.3d 902 (2004).
¶ 15 Reversed and remanded for resentencing.
I concur: MORGAN, A.C.J.
HUNT, J. (dissenting).
¶ 16 I respectfully dissent from the majority's decision that Blakely precludes the trial court's consideration of Curtis's volunteered breach-of-trust admission during sentencing as a basis for imposing an exceptional sentence. See Opinion at 1235-1236.
¶ 17 As the majority acknowledges at page 1235 of its Opinion, Blakely[2] requires that any fact (other than the fact of a prior conviction) that "increases the penalty for a crime beyond the prescribed statutory maximum" must be found by a jury beyond a reasonable doubt or "admitted by the defendant." Curtis admitted at sentencing that he had betrayed the trust of the victims and their families. The trial court used Curtis's admitted abuse of trust as a basis for imposing an exceptional sentence under RCW 9.94A.535(2)(d)(iv). The plain language of Blakely's holding allows imposition of an exceptional sentence based on a penalty-increasing factor that the defendant admits.
¶ 18 The majority reasons that Blakely precludes using Curtis's admission for sentencing enhancement purposes. Opinion at 1235. In support, the majority cites Division Three's opinion in State v. Serrano, 95 Wash.App. 700, 708-09, 977 P.2d 47 (1999). As I read Serrano, however, neither that opinion nor Blakely precludes consideration of a defendant's unsolicited admissions during sentencing for purposes of providing a factual basis for an exceptional sentence.
¶ 19 Rather, the defect in Serrano was not that the factual basis for the exceptional sentence arose during sentencing, as opposed to during a trial or guilty plea, but rather that it arose in response to the trial court's improperly questioning of the defendant at sentencing, asking, "Do you deny that this crime occurred?" Serrano, 95 Wash.App. at 708, 977 P.2d 47. Division Three noted:
To the extent the sentencing court here sought to ascertain facts, [the court's] question in the context of Mr. Serrano's allocution was improper. Mr. Serrano did not invite the inquiry, and a court may not rely on a defendant's professed innocence as an aggravating factor to support an exceptional sentence. The court's question was improper.
95 Wash.App. at 709, 977 P.2d 47 (citations omitted) (emphases added). Additionally, Division Three criticized the sentencing court for imposing an exceptional sentence where it apparently "disagreed with the jury's verdict, the law, or both" about whether there was a trust relationship between Serrano and the victim. 95 Wash.App. at 715, 977 P.2d 47. Such is not the case here.
¶ 20 During Curtis's sentencing allocution, he spontaneously volunteered that, in assaulting the victims, he had abused a position of trust. Unlike Serrano, Curtis did not make this admission in response to any questioning by the sentencing court improper or otherwise.
¶ 21 The majority also relies on State v. Lord, 117 Wash.2d 829, 897, 822 P.2d 177 (1991), cited in Serrano, for the proposition that allocution at sentencing is a "plea for mercy; it is not intended to advance or dispute facts." Opinion at 1236. The Supreme Court in Lord, however, went on to hold that because Lord had used sentencing allocution to testify and to dispute the State's evidence, the State was entitled to cross examine him. Lord, 117 Wash.2d at 899-900, 822 P.2d 177. Thus, I read the Lord decision as allowing cross examination to resolve factual disputes at sentencing where, as here, the defendant (not the State or the court) has opened the door to such disputes. In my view, the majority has taken the above quotation from Lord out of context, and the holding in Lord does not support the majority's proposition.[3]
*1238 ¶ 22 I further disagree with the majority's statement that because "Curtis allocuted before Blakely was decided," he could not knowingly have waived his Blakely rights. Opinion at 1236. In my view, there is no issue of waiver of Blakely rights at issue here. Curtis, unsolicited by the State or by the court, voluntarily apologized to the victims for his breach of their trust in committing the crimes to which he had pled guilty. Although such admission could also have been part of his plea for mercy Blakely does not preclude the sentencing court's consideration of such admission for purposes of imposing an exceptional sentence. On the contrary, such admission fulfills the Blakely requirement that an aggravating exceptional sentence fact must either be found by the jury or admitted by the defendant.
¶ 23 I would affirm Curtis's exceptional sentence.
NOTES
[1] In the rest of his statement, Curtis addressed his friends, family, and co-workers.
[2] Blakely v. Washington, ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[3] The majority's cite to a similar phrase from In re Pers. Restraint of Benn, 134 Wash.2d 868, 893, 952 P.2d 116 (1998), is also out of context. In that case, as in Serrano, the defendant exceeded the normal bounds of allocution by testifying about the facts of his claim of self-defense, apparently to his detriment. The Supreme Court ruled that his defense counsel's response, turning away during this unsworn testimony and later asking the jury to impose a life sentence rather than the death penalty, did not constitute ineffective assistance.