

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37369-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LANCE A. THOMASON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — A jury found Lance Thomason guilty of second degree robbery for placing food items under his clothes at a grocery store, exiting the store without paying for the items, and striking a security guard when confronted in the parking lot. At sentencing, both parties recommended the low-end of the standard range. After expressing dissatisfaction with the charges and resulting sentencing range, the court accepted the joint recommendation and sentenced Mr. Thomason to 63 months.

Mr. Thomason appeals. He argues that his trial counsel was ineffective for failing to object to the evidence. He also challenges his sentence, arguing that the trial court abused its discretion by (1) failing to recognize that it had discretion to impose an

exceptional downward sentence, (2) imposing a lifetime protection order, and (3) imposing a community custody supervision fee after finding him indigent.

We affirm the conviction as well as the standard-range sentence. We remand for reconsideration of the protection order and the community custody supervision fee.

FACTS

1. UNDERLYING FACTS AND INVESTIGATION

Lance Thomason entered a Yoke's Fresh Market in September 2018, around four in the afternoon. He picked up meat and cheese from one part of the store before he walked to the natural foods section and tucked the food under his clothing. A security guard in plain clothes followed Mr. Thomason around the store. He did not have eyes on Mr. Thomason the entire time, and at points watched him through rows and in the reflection of glass doors.

The guard confronted Mr. Thomason in the parking lot after he exited the store. The guard grabbed Mr. Thomason's arm, displayed a badge, and tried to get him to go back in the store. Mr. Thomason tried to pull himself free. The guard warned Mr. Thomason that he was only making the situation worse. Mr. Thomason struck the guard three times, the third time with a closed fist to the cheek. Mr. Thomason eventually escaped by pulling out of his shirt and running.

The guard collected the shirt, called law enforcement, and got into his own car to look for Mr. Thomason. He found Mr. Thomason running through a neighborhood, and

observed him go into a house. Eventually a car pulled up to the house. Mr. Thomason got in the passenger side and the vehicle drove away. The guard testified at trial that before the robbery, Mr. Thomason arrived at the store in this same vehicle. The guard reported the license plate number to law enforcement.

Mr. Thomason was eventually charged with second degree robbery.

2. TRIAL

At trial, the security guard testified along with two police officers and Mr. Thomason's mother. The State also presented the store's surveillance footage. Kathy Thomason, testified that she owned the house that Mr. Thomason entered on the day of the incident. When officers arrived to ask her questions, she showed them surveillance footage from the side of her house. She described the video as showing her son, Lance Thomason, entering her home shortly after the incident at Yoke's. The surveillance footage was not preserved by law enforcement or played during trial.

Corporal Ron Van Tassel testified that he was one of the investigating officers. He testified that he visited with Ms. Thomason and when he described the suspect, she indicated that the description fit her son, Lance. Corporal Van Tassel also testified that he watched a security video with Ms. Thomason, and she identified her son, Lance Thomason, in the video. When asked if he was able to later identify Mr. Thomason, Corporal Van Tassel testified that he was able to pull up "[p]hotographs that we have through our system." Report of Proceedings (RP) (Cochran) at 169. Officer Darryl

3

Groom also testified about the video's contents and Ms. Thomason's identification of her son during the investigation.

Mr. Thomason's defense theory at trial was that he did not steal anything. During closing argument, his attorney pointed out that despite the struggle in the parking lot, and Mr. Thomason's baggy pants, Mr. Thomason did not drop anything, and no food items were left behind in the parking lot. The security guard never saw Mr. Thomason discard items, and Ms. Thomason never testified to finding food items left at her house after the incident. Without sufficient evidence to prove a theft, defense counsel argued that Mr. Thomason could not be convicted of second degree robbery.

The jury disagreed and returned a verdict of guilty.

3. SENTENCING

At sentencing, the parties agreed that Mr. Thomason's offender score was 10, and his sentencing range was 63-84 months. Both parties recommended a 63-month sentence. During allocution, Mr. Thomason made comments about a plea agreement and drug court contract that were apparently considered before trial, although defense counsel advised that Mr. Thomason did not qualify for drug court. Mr. Thomason asked for an "exceptional sentence" of 12 months, equivalent to the 12 months he would have served had he entered drug court.

Before imposing its sentence, the trial court expressed general dissatisfaction with

the guideline sentence for this crime:

> I don't—I don't like these charges. I'm not faulting the state; that's not
> what I mean. But this is a particular charge I—I—and some of my judicial
> colleagues call it the glorified shoplifting charge where someone shoplifts
> and it ends up turning into a robbery because of a chain of events with
> security personnel generally, just like what happened here. So I agree with
> Mr. Zeller that it's a pretty significant punishment for what happened.
> Unfortunately, and I know the state agrees with me, I don't have
> much discretion here. The only discretion I have is the time period between
> 63 and 84 months. That's all I've got. That's the only discretion I have. I
> wish I had more.

RP (Cochran) at 10.

The court ultimately accepted the joint recommendation and imposed a sentence

of 63 months, lamenting that it had no discretion to go lower. The court also imposed a

lifetime no-contact order against Mr. Thomason regarding the guard. Mr. Thomason was

found indigent. The court waived multiple legal financial obligations (LFOs) and said

that it would "prefer to waive" the crime victim assessment but had no discretion to do

so. The judgment and sentence contained a requirement for Mr. Thomason to pay a

community custody supervision fee.

Mr. Thomason now appeals his conviction and sentence to this court.

## ANALYSIS

A. DID TRIAL COUNSEL'S FAILURE TO OBJECT TO TESTIMONY CONSTITUTE INEFFECTIVE ASSISTANCE OF COUNSEL?

Mr. Thomason argues that his trial attorney was ineffective because he failed to object to hearsay and propensity evidence. In order to show ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The defendant has the burden to show that counsel performed below an objective standard of reasonableness under "prevailing professional norms," and after "considering all the circumstances." *Id*. at 688. Courts must be highly deferential, and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

However, error alone does not warrant reversal absent prejudice. *Id*. at 691. The defendant must also prove prejudice. *Id*. at 693. This showing requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The error must undermine confidence in the outcome. *Id*.

In the context of objections, Washington courts presume "that the failure to object was the product of legitimate trial strategy." *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). Whether to object or not is a "classic example of trial tactics. Only in

6

egregious circumstances . . . will the failure to object constitute incompetence of counsel justifying reversal." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).

In this case, Mr. Thomason points to several instances where he suggests trial counsel should have objected: the officer's testimony that he recognized Mr. Thomason from photographs in "our system," officers' testimony describing the security video, an officer's in court identification of Mr. Thomason despite having only seen him in surveillance footage, and several potential instances of hearsay.

All of these instances pertain to identifying Mr. Thomason as the suspect. But identity was not an issue at trial. Defense counsel conceded that it was Mr. Thomason at the store and at his mother's house. Instead, defense counsel argued there was insufficient evidence that Mr. Thomason left the store with stolen items. If the jury agreed, it could not convict Mr. Thomason of robbery. Given this defense strategy, there are reasonably strategic reasons why counsel would not object to evidence concerning identity. We do not find that counsel's performance was deficient.

B. DID THE TRIAL COURT ABUSE ITS DISCRETION BY FAILING TO RECOGNIZE THAT IT HAD DISCRETION TO IMPOSE AN EXCEPTIONAL SENTENCE?

Mr. Thomason contends that the trial court failed to consider an exceptional sentence downward and that the unique facts of this case justify such an exceptional sentence. The State initially responds by arguing that Mr. Thomason failed to preserve this issue for appeal. We disagree.

7

Although defense counsel asked for a sentence within the standard range, Mr. Thomason clearly asked for an exceptional downward sentence of 12 months. This placed the issue of an exceptional sentence before the court. *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017) ("When a trial court is called on to make a discretionary sentencing decision, the court must meaningfully consider the request in accordance with the applicable law.").

While the issue of an exceptional sentence was before the court, neither Mr. Thomason nor his attorney provided a basis for such a sentence, other than Mr. Thomason's comments about plea negotiations. Generally speaking, a sentence within the standard range is not appealable. RCW 9.94A.585(1). Under Washington law, "no defendant is entitled" to a sentence below the standard range, but "every defendant *is* entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005). A trial court abuses its discretion when it erroneously believes it lacks the authority to consider an exceptional sentence. *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002).

Mr. Thomason argues that the trial court's comment, that it had no discretion to sentence outside the standard range, is per se abuse of discretion. This is true, however, only if the trial court disregarded facts before it that could legally support an exceptional

sentence. If there were no factors justifying an exceptional sentence, the trial court did not have discretion to go outside of the standard range.

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, provides that a court "may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of [the SRA], that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. The statute lists 11 non-exclusive mitigating factors that, if proved by a preponderance of the evidence, may justify an exceptional downward sentence. RCW 9.94A.535(1).

On appeal, Mr. Thomason does not allege that any of the statutory factors could be used to justify an exceptional sentence in his case. Instead, Mr. Thomason argues that the "unique nature" of his offense, i.e., stealing a small amount of food and assaulting a security guard in the parking lot provided a mitigating circumstance not otherwise contemplated by the SRA.

When a court considers a mitigating factor not listed in RCW 9.94A.535(1)'s illustrative list, it must analyze that factor with a two-part test to determine if it can support a downward sentence. *State v. O'Dell*, 183 Wn.2d 680, 690, 358 P.3d 359 (2015). The court must first ask whether the legislature "necessarily considered" the factor when establishing the standard range. *Id*. The court must then ask whether that factor is "sufficiently substantial and compelling" to differentiate the instant crime from another in the same category. *Id*.

9

Very few courts have found mitigating factors to support an exceptional sentence that were not "necessarily considered" by the legislature when it established the standard range. In *State v. Alexander*, the Washington Supreme Court examined whether possessing "an extraordinarily small amount" of a drug could be considered a mitigating factor under the statute. 125 Wn.2d 717, 727, 888 P.2d 1169 (1995). The court found the legislature did not necessarily consider this factor, given that the code specified an upper limit for the amount of drug, but not a bottom limit, and that such a small amount made the crime distinct from other instances of the crime in the same category. *Id.*

In *State v. Garcia*, the trial court listed several factors to support an exceptional downward sentence for failing to register as a sex offender. 162 Wn. App. 678, 685, 256 P.3d 379 (2011). These included the defendant's transportation difficulties, failed attempts to comply, his obligation to register with two different agencies located 40 miles apart, and the de minimus nature of his violation. Ultimately, this court upheld the exceptional sentence, finding that all of the listed factors—except the last one—were not considered by the legislature. In reaching this conclusion, the court made clear that "exceptional sentences based upon the size of the violation is an evaluation of proportional seriousness, a factor that the legislature has already taken into consideration." *Id.*

In this case, Mr. Thomason argues that the de minimus nature of his crime places it within a unique category, worthy of an exceptional sentence. Mr. Thomason was found

guilty of second degree robbery for stealing food from a store and assaulting a security guard while trying to escape. Mr. Thomason does not cite any authority to support his argument that these facts are unique. *See, e.g.*, *State v. Manchester*, 57 Wn. App. 765, 790 P.2d 217 (1990) (Defendant could be convicted of first degree robbery for using force to retain property after he left store without paying for it); *State v. Phillips*, 9 Wn. App. 2d 368, 372, 444 P.3d 51 (2019) (second degree robbery for stealing a case of beer and fighting with employees outside of the store).

Nor does the trial court's expressed frustration suggest that this is a unique case. To the contrary, the court noted that these facts were so common that they had a colloquial name: glorified shoplifting. The court's frustration was not with this case in particular, but with the standard range in general. But a court's general disagreement with the legislative decision on the sentencing guidelines for a particular crime is not a mitigating factor justifying an exceptional sentence. *See State v. Serrano*, 95 Wn. App. 700, 715, 977 P.2d 47 (1999).

At sentencing and on appeal, Mr. Thomason fails to put forth factors that would justify a sentence outside the standard range. Without a sufficient justification, the court lacked authority to impose an exceptional sentence. Consequently, the court did not abuse its discretion in reaching this conclusion.

11

C.  DID THE TRIAL COURT ABUSE ITS DISCRETION BY IMPOSING A LIFETIME
    PROTECTION ORDER AND ORDERING A COMMUNITY CUSTODY SUPERVISION FEE?

Mr. Thomason argues that the trial court abused its discretion by imposing a

lifetime protection order at sentencing.  The State concedes error.

Courts are empowered to impose crime-related prohibitions as part of a sentence.

RCW 9.94A.505(9).  These can include no-contact orders.  *State v. Armendariz*, 160

Wn.2d 106, 118, 156 P.3d 201 (2007).  The term of a crime-related prohibition cannot

exceed the statutory maximum sentence for the offense.  *Id*. at 119-20.  In this case, the

court imposed a lifetime no-contact order on Mr. Thomason.  The statutory maximum

sentence for second degree robbery is ten years.  It was error to impose a no-contact order

longer than that maximum sentence.

Mr. Thomason also challenges the imposition of the community custody

supervision fee.  At sentencing, the court found Mr. Thomason indigent and made an

attempt to identify the discretionary fees and waive them.  The community custody

supervision fee is included in the judgment and sentence as boilerplate language.  The

court did not strike it out.  The State contends the trial court has discretion to waive this

fee and did not abuse its discretion by imposing it.

The State is correct that the fee does not require waiver upon a finding of

indigency.  In 2018, the legislature amended RCW 10.01.160(3) to require courts to

waive discretionary costs for indigent defendants.  LAWS OF 2018, ch. 269, § 6(3).

"Costs" are "limited to expenses specially incurred by the state in prosecuting the defendant or in administering the deferred prosecution program under chapter 10.05 RCW or pretrial supervision." RCW 10.01.160(2); *see State v. Clark*, 191 Wn. App. 369, 375, 362 P.3d 309 (2015). While the statute provides examples of waivable costs, not all discretionary LFOs qualify as "costs" within the meaning of the statute. *Clark*, 191 Wn. App. at 375-76.

One such LFO is a community custody supervision fee, incurred by the State for the post-conviction supervision of the defendant. RCW 9.94A.703(2)(d). While the community custody fee is discretionary, and thus waivable by the trial court, it is not a "cost" that requires waiver under RCW 10.01.160(3). *State v. Starr*, __ Wn. App. __, 479 P.3d 1209, 1211 (2021). Consequently, the trial court is not required to inquire into a defendant's ability to pay before imposing this supervision assessment.

While the court is not required to waive the fee, in this case it appears that the court was attempting to waive any and all discretionary fees and missed this boilerplate language.

D. STATEMENT OF ADDITIONAL GROUNDS (SAG)

Mr. Thomason raises four additional issues in his statement of additional grounds. He contends that (1) there was insufficient evidence to convict him of second degree robbery, (2) his right to a speedy trial was violated, (3) the State improperly filed an

13

amended information, and (4) his constitutional right to not be put in jeopardy for the same crime twice was violated. We address these allegations in turn.

Mr. Thomason first argues that the State did not prove every necessary element of robbery because the amended information stated that he took property "from the person and in the presence" of the guard. The court addressed this same issue at a half-time motion at trial and concluded that the State properly followed the practice of charging in the conjunctive and proving in the disjunctive. This issue is not meritorious. *State v. Dixon*, 78 Wn.2d 796, 802-03, 479 P.2d 931 (1971).

Mr. Thomason next contends that his right to a speedy trial was violated. The trial court granted a continuance requested by Mr. Thomason's counsel over Mr. Thomason's objection. The court found the continuance was necessary for defense counsel to prepare for trial, was required in the administration of justice, and did not prejudice the defendant.

A court's decision to grant a continuance is reviewed for abuse of discretion. *State v. Ollivier*, 178 Wn.2d 813, 822, 312 P.3d 1 (2013). "[G]ranting defense counsel's request for more time to prepare for trial, even 'over defendant's objection, to ensure effective representation and a fair trial,' is not necessarily an abuse of discretion." *State v. Saunders*, 153 Wn. App. 209, 217, 220 P.3d 1238 (2009) (quoting *State v. Campbell*, 103 Wn.2d 1, 15, 691 P.2d 929 (1984)). The rule provides that a court may continue a trial upon motion of a party when required in the administration of justice if the

14

defendant is not prejudiced. CrR 3.3(f)(2). The court must state on the record or in writing the reasons for the continuance. *Id.* A continuance granted under this provision tolls speedy trial from the date of the original trial to the new trial date. CrR 3.3(e)(3).

In this case, defense counsel's motion to continue the trial, even over Mr. Thomason's objection, waives any objection to the continuance. CrR 3.3(f)(2). The continuance was not an abuse of discretion and Mr. Thomason's speedy trial rights were not violated.

Mr. Thomason next contends that the court should not have allowed the prosecution to file an amended information, lowering the charge from first degree robbery to second degree robbery on the eve of trial. Defense counsel did not object to this motion below. He argues now that this prejudiced his ability to present a defense. Second degree robbery is a lesser degree of the same crime. Proving the charge does not rely on any additional facts, and in fact shrank Mr. Thomason's potential sentence. He was not prejudiced by the amended information.

Finally, Mr. Thomason appears to argue that amending the information subjects him to prosecution twice for the same criminal conduct. His argument is unclear and without merit. We decline to address it.

CONCLUSION

Remand to modify the term of the protection order from lifetime to 10 years. The

trial court's failure to strike the community supervision fee was a clerical error. We

direct the trial court to strike the fee on remand.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, C.J.