16 P.3d 74 (2001)
104 Wash.App. 191
STATE of Washington, Respondent,
v.
Benjamin Scott BARNETT, Appellant.
No. 18940-6-III.
Court of Appeals of Washington, Division 3, Panel Eight.
January 11, 2001.
*76 Paul J. Wasson, Spokane, for Appellant.
Michael G. McCarthy, Deputy Pros. Atty., Yakima, for Respondent.
*75 SWEENEY, J.
A jury found Benjamin Barnett guilty of unlawful imprisonment, first degree burglary, second degree rape, second degree malicious *77 mischief, first degree kidnapping, second degree assault, and assault in violation of a protective order, following a vicious attack on his short-term girl friend, Ms. M. The jury also found Mr. Barnett had been armed with a deadly weapon during four of the counts. The court imposed an exceptional sentence upward. Mr. Barnett claims the court erred by (1) denying his request to testify, (2) polling the jury generally rather than individually, (3) answering a question from the jury with a note, (4) instructing the jury on second degree assault as a lesser offense of attempted second degree murder, and (5) imposing an exceptional sentence. We affirm the convictions but reverse the exceptional sentence.

FACTS
Benjamin Barnett began dating Ms. M in September 1998. They dated for about two months. Ms. M tried to end their relationship in November. Mr. Barnett rejected the overture. He met Ms. M in a church parking lot on November 25 armed with a knife. Mr. Barnett forcibly detained her for approximately 45 minutes before she escaped.
Ms. M obtained a restraining order against Mr. Barnett on December 10. The order was served on Mr. Barnett on December 14. Later that day, Mr. Barnett went to Ms. M's home. She refused to let him in. Mr. Barnett climbed through a window. She fled to a second floor bedroom. Mr. Barnett took a knife from the kitchen and chased her. He forced his way into her room.
Mr. Barnett threatened Ms. M until she had sex with him. He then forced her outside at knifepoint. He repeatedly threatened to kill her and her family. Ms. M escaped by jumping over a fence and returned to her home.
Again Mr. Barnett chased her inside. He smashed a phone, a coffee table, and a sliding glass door. Ms. M escaped again and ran to a nearby grocery store. She called 911 and waited for police to arrive. Mr. Barnett caught up with her. He chased her through the parking lot and as she tried to get in a Good Samaritan's car, he pulled her out. Finally, two other men distracted Mr. Barnett until Ms. M could get into the Good Samaritan's car.
Mr. Barnett was arrested. He voluntarily gave a statement.
The State charged him with two counts of unlawful imprisonment; and one count each of harassment, first degree burglary, first degree rape, second degree malicious mischief, first degree kidnapping, assault in violation of a protection order, and attempted second degree murder.
Mr. Barnett chose not to testify. His attorney said his testimony would essentially be the same as Ms. M's except for his intent and recommended that he not testify. The trial court spoke to Mr. Barnett and confirmed that he understood both his right to remain silent and his right to testify. The defense presented no evidence.
The next day, after both parties had rested and after the instructions conference, Mr. Barnett told the court he wanted to testify. His lawyer again told the court he advised against it but left it to the court. Defense counsel did not move to reopen Mr. Barnett's case. The court refused to reopen to allow Mr. Barnett to testify.
During jury deliberations, the jury sent a question to the court: "On Instruction # 17 we want to know if `intent to commit a crime' on item 2 refers to violation of protection order. Does violation of protection order constitute the crime referred to here?" The trial judge discussed it with counsel and answered yes.
The jury found Mr. Barnett guilty of one count of unlawful imprisonment, first degree burglary, second degree rape, second degree malicious mischief, first degree kidnapping, second degree assault, and assault in violation of a protective order. It also found that he was armed with a deadly weapon on four of the counts.
Neither party asked the court to poll the jury. The trial court polled the jury anyway. The court asked the jury as a whole whether each verdict was unanimous and whether it agreed with the presiding juror's statement. The whole jury answered yes.
*78 Mr. Barnett spoke at sentencing. He said that had he testified he would have admitted to everything except the rape charge. The court imposed an exceptional sentence of 371 months. The high end of the standard range was 364 months.

DISCUSSION

MR. BARNETT'S REQUEST TO TESTIFY
Mr. Barnett first contends that the trial judge abused his discretion by refusing to reopen the case to allow him to testify.
A defendant has a fundamental right to testify. State v. Thomas, 128 Wash.2d 553, 558, 910 P.2d 475 (1996); Rock v. Arkansas, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). And only the defendant can decide whether or not to testify. Thomas, 128 Wash.2d at 558, 910 P.2d 475. But a defendant may waive the right to testify. Id. That waiver must, however, be knowing, voluntary, and intelligent. Id. Mr. Barnett's was.
Here, the court explained to Mr. Barnett that he had a right to testify and a right not to testifyto remain silent. Mr. Barnett asked to speak privately with his attorney. He then returned to the courtroom and said: "My requirement to testify, I plead the fifth, discriminate myself. I don't want to get up on my stand, plead my fifth amendment in front of you, so I don't want to not mess with going up, because I don't want to screw everything up. It's alreadyI don't want to get up there." The defense then rested. The court recessed.
But the next morning Mr. Barnett had the following exchange with the court:
THE COURT: All right. Mr. Barnett.
[MR. BARNETT]: Yeah. I would like to know, yesterday we talked about the fact when we're doing the closing arguments, resting the state and defense, I talked about not testifying, but I got a lot of emotions inside. I have a lot of things inside that I'd like to relay some. The fact that I'm pretty bothered about the way they came in and talked about the relationship. I think I should tell my point about the relationship before the jurors know before they come back about the whole relationship and everything. That's what bothers me, in case I want to explain the reason why all this is happening while I'm up there. I would like to testify, if it's all right with you. I know I gave my right up yesterday to testify, but I would still like to testify.
I have no witnesses. I have nothing on my defense except me. I would like to know if I could testify before it all ends, just to feel a lot better, because, Your Honor, I got a lot of stuff inside of me I want to release, it's hard for me to hold onto. I've been up all night thinking about it. It's hard for me to sleep. It bothered me yesterday when I left and didn't testify. It ate my heart out. I felt everybody else had testified, I have a right to. I didn't understand. The reason I didn't testify was I was so emotionally stressed from all the stuff that happened, I just wasn't ready to. I'm asking today if you'd let me please testify, if it's all right.
THE COURT: Mr. Gonzales.
MR. GONZALES [Defense Counsel]: Your Honor, I would defer to the court's decision in that matter. If Mr. Barnett testifies, he is testifying against counsel's advice. He is, by his own admission, he's somewhat unstable, and it is my considered belief that all he could do is damage himself. However, I can't, certainly, prevent him from damaging himself.
THE COURT: What's the court's role in that, Mr. Keller, in your view?
MR. KELLER [Prosecutor]: Your Honor, it's not an issue I looked at. The state would be opposing it. The decision was made. A record was made of his decision not to testify. If, however, he is allowed to testify, the state would request we recess, and I have time to go back and prepare for that.
THE COURT: I'm going to deny your request, Mr. Barnett. This matter was thoroughly explored yesterday, and I think that's when you effectively made up your mind and declared what you wished to do. I'm not prepared to accept a vascillation, which I consider this to be.

*79 Further, you are proposing that you only testify as to a limited issue in this case, that is, what you perceive to be the relationship between yourself and the young lady, and you can't do that. The whole matter is before the jury or not in terms of cross-examination. So therefore, I'm going to deny your request.
Simply put, Mr. Barnett changed his mind. But he did so too late. The defense had rested. The decision to reopen a proceeding to introduce additional evidence is one left to the sound discretion of the trial court. State v. Brinkley, 66 Wash.App. 844, 848, 837 P.2d 20 (1992); State v. Sanchez, 60 Wash.App. 687, 696, 806 P.2d 782 (1991). A trial court's decision on whether or not to reopen a case will not be reversed absent a "showing of manifest abuse of discretion and prejudice resulting to the complaining party." Brinkley, 66 Wash.App. at 848, 837 P.2d 20. A court abuses its discretion when it bases a decision on untenable grounds or untenable reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
Had Mr. Barnett asked to testify before the defense rested, there would be no question of his right to testify. But he did not. And so he waived his right to testify. The defense then rested. The court then recessed for the evening. When all returned the next morning, the court was prepared to instruct the jury and move forward with closing argument. The court's decision not to disrupt the trial schedule to accommodate Mr. Barnett's testimonytestimony which arguably would have hurt Mr. Barnett's caseappears to be a sound one. On this record, we can hardly say that the trial judge abused his discretion.

GENERAL JURY POLL
Mr. Barnett next contends that the court should have polled the jurors individually because there were too many charges and too many verdicts to not poll the jury.
When a verdict or a special finding is returned and before it is recorded, the jury shall be polled at the request of any party or upon the court's own motion. If at the conclusion of the poll, all of the jurors do not concur, the jury may be directed to retire for further deliberations or may be discharged by the court.
CrR 6.16(a)(3) (emphasis added).
Mr. Barnett relies on State v. Pockert. State v. Pockert, 49 Wash.App. 859, 746 P.2d 839 (1987). Pockert is easily distinguishable. There, the court reversed and gave Mr. Pockert a new trial after the trial court denied his request to have the jury polled. Id. at 862, 746 P.2d 839. But here Mr. Barnett did not ask the court to poll the jury.
But even if he had, the court's poll satisfied the rule. The court first asked the jurors if anyone disagreed with the verdicts signed by the presiding juror. The judge then went through each verdict separately, asked whether it was unanimous, and whether any juror disagreed or dissented. CrR 6.16(a)(3) requires nothing more.

ADDITIONAL INSTRUCTION ON INTENT DURING DELIBERATIONS
The jury sent a question to the court during deliberations. The note read: "On Instruction # 17 we want to know if `intent to commit a crime' on item 2 refers to violation of protection order. Does violation of protection order constitute the crime referred to here?" The court answered yes but only after discussing it with counsel. Mr. Barnett's counsel agreed with the answer given to the jury. Mr. Barnett cannot now object to the court's answer.
The doctrine of invited error precludes review of Mr. Barnett's assigned error. The doctrine of invited error prevents a party from setting up an error at trial and then complaining of it on appeal. State v. Pam, 101 Wash.2d 507, 511, 680 P.2d 762 (1984), overruled on other grounds by State v. Olson, 126 Wash.2d 315, 893 P.2d 629 (1995). A potential error is deemed waived "if the party asserting such error materially contributed thereto." In re Dependency of K.R., 128 Wash.2d 129, 147, 904 P.2d 1132 (1995) (citing Pam, 101 Wash.2d at 511, 680 P.2d 762).
Any error here (and we do not decide whether there was error) was invited.

*80 SECOND DEGREE ASSAULT AS A LESSER OFFENSE OF ATTEMPTED SECOND DEGREE MURDER
Mr. Barnett next contends that the court should have only instructed the jury on first degree assault as a lesser included offense of attempted second degree murder because second degree assault does not contain an element of "intent" to murder. But Mr. Barnett did not object to including second degree assault as a lesser included offense.
"It is well-settled law that before error can be claimed on the basis of a jury instruction given by the trial court, an appellant must first show that an exception was taken to that instruction in the trial court. That rule is not a mere technicality." State v.. Bailey, 114 Wash.2d 340, 345, 787 P.2d 1378 (1990) (footnote omitted); see State v. Salas, 127 Wash.2d 173, 181, 897 P.2d 1246 (1995).
Mr. Barnett did not except to the instruction on second degree assault. In fact, Mr. Barnett's counsel considered proposing third degree assault as a lesser included offense, but chose not to. Mr. Barnett cannot now claim the court should have instructed the jury on only first degree assault.
The instruction is the law of the case. See Bailey, 114 Wash.2d at 347, 787 P.2d 1378.

EXCEPTIONAL SENTENCE
Finally, Mr. Barnett contends that the court's reasons do not support an exceptional sentence.
A court may depart from the presumptive sentence range if the offense involves substantial and compelling circumstances. RCW 9.94A.120(2); State v. Hammond, 121 Wash.2d 787, 794, 854 P.2d 637 (1993). Making that determination is a three-step process. State v. Flake, 76 Wash.App. 174, 182, 883 P.2d 341 (1994). First, we review the record to determine whether the sentencing judge's reasons are supported by the evidence. RCW 9.94A.210(4)(a); State v. Jeannotte, 133 Wash.2d 847, 856, 947 P.2d 1192 (1997); State v. Nordby, 106 Wash.2d 514, 517-18, 723 P.2d 1117 (1986). We next review the legal sufficiency of the reasons given as a matter of law. RCW 9.94A.210(4)(a); Hammond, 121 Wash.2d at 794, 854 P.2d 637. And finally, we determine whether the sentence is clearly excessive. RCW 9.94A.210(4)(b); Flake, 76 Wash.App. at 182, 883 P.2d 341.
Here, the court found Mr. Barnett's offenses involved domestic violence and gave four reasons for imposing the exceptional sentence. First, Mr. Barnett's offenses were part of an ongoing pattern of psychological, physical, and sexual abuse over a "prolonged two week period of time...." Second, Mr. Barnett committed the offenses almost immediately after he was served with the no contact order. Third, Mr. Barnett knew Ms. M was vulnerable because of her age. And he waited until she was home alone before breaking into the house. Finally, Mr. Barnett showed deliberate cruelty by repeatedly threatening to kill Ms. M and her family. The trial court found any one of the factors alone was sufficient to support Mr. Barnett's exceptional sentence.
Mr. Barnett's assignment of error implicates only the second prong of the three-part inquirythe legal sufficiency of the court's reasons.
RCW 9.94A.390(2) lists the statutory aggravating factors. Subsection (h) provides:
The current offense involved domestic violence, as defined in RCW 10.99.020 and one or more of the following was present:
(i) The offense was part of an ongoing pattern of psychological, physical, or sexual abuse of the victim manifested by multiple incidents over a prolonged period of time;
(ii) The offense occurred within sight or sound of the victim's or the offender's minor children under the age of eighteen years; or
(iii) The offender's conduct during the commission of the current offense manifested deliberate cruelty or intimidation of the victim.
*81 No reported cases interpret RCW 9.94A.390(2)(h). Unfortunately, and problematically, two unpublished opinions do.[1]
Ongoing Pattern of Abuse. The trial court found Mr. Barnett's offenses were "part of an ongoing pattern of psychological, physical and sexual abuse of the victim in multiple incidents over a prolonged two week period of time, and involved domestic violence. The sexual abuse occurred as a part of these incidents and there is no evidence of such at any prior time." First, the abuse here is deplorable. But the question is whether it is so extreme as to fall outside of the substantial punishment already meted out by the Legislature for this crime. And we conclude it is not. Two weeks is not a prolonged period of time.
Cases from this state suggest that years are required. State v. Schmeck, 98 Wash. App. 647, 651, 990 P.2d 472 (1999) (threats over a period of three years constitute a prolonged period of time and demonstrate a "pattern of psychological abuse manifesting deliberate cruelty or intimidation"); State v. Duvall, 86 Wash.App. 871, 877, 940 P.2d 671 (1997) (two-year period of abuse occurring in Oregon and Washington sufficient to demonstrate pattern of abuse); State v. Quigg, 72 Wash.App. 828, 841, 866 P.2d 655 (1994) (sexual abuse over a period of three days is insufficient to demonstrate an "ongoing pattern").
We conclude a "pattern of abuse" requires multiple incidents over a substantial period of timemore than two weeks. Mr. Barnett's offenses here escalatedfrom unlawful imprisonment to assault and rape. And the State charged and convicted him of all of them. But not one of the crimes was a single offense committed over a prolonged time period.
Proximity Between Issuance of Protective Order and Offenses. The trial court noted Mr. Barnett committed the majority of the offenses against Ms. M on the same day he was served with an order preventing him from contacting her. Mr. Barnett was charged and convicted of assault in violation of a protective order.
When Mr. Barnett received the order is immaterial. An assault in violation of a protective order committed the day of service is not any more vicious than one occurring on some later date. Mr. Barnett violated the protection order and in so doing broke the law, no matter when he did it. This is not, therefore, a substantial and compelling factor as required by RCW 9.94A.120(2).
Vulnerability. RCW 9.94A.390(2)(b) provides: "The defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health." The focus is on the victim; with the court determining whether the victim was more vulnerable than other victims and if the defendant knew of the particular vulnerability. State v. Ogden, 102 Wash.App. 357, 366, 7 P.3d 839 (2000).
We have generally applied the particular vulnerability factor to victims who are vulnerable at the time the attack begins. See Nordby, 106 Wash.2d at 518, 723 P.2d 1117 (defendant pleaded guilty to vehicular assault; victim, who was pedestrian pushing bicycle, was "completely defenseless and vulnerable"); State v. Bedker, 74 Wash.App. 87, 94, 871 P.2d 673 (1994) (four- to five-year-old victim of child rape was vulnerable); State v. Scott, 72 Wash.App. 207, 217, 866 P.2d 1258 (1993) (78-year-old victim who suffered from Alzheimer's disease was particularly vulnerable), aff'd sub nom. State v. Ritchie, 126 Wash.2d 388, 894 P.2d 1308 (1995). However, victims may be rendered particularly vulnerable by their attacker. See Ogden, 102 Wash.App. at 367-68, 7 P.3d 839 (victim rendered unconscious by repeated blows to the head); State v. Baird, 83 Wash.App. 477, 489, 922 P.2d 157 (1996) (victim became particularly vulnerable after being beaten unconscious).
Again, the crimes here are vicious. But this 17-year-old victim is not particularly *82 vulnerable. Ms. M led Mr. Barnett on a lengthy chase. She did not suffer because of age, disability, or ill health. Further, Ms. M was not incapacitated by the attack and thereby rendered vulnerable. She was able to avoid his attempts to stab her and eventually escaped.
Ms. M was home alone. But that was not the reason he chose her as a victim. See State v. Ross, 71 Wash.App. 556, 565-66, 861 P.2d 473, 883 P.2d 329 (1993) (defendant selected victims who were alone in offices because they were vulnerable). Mr. Barnett chose Ms. M because of their failed relationship, not because she presented an easy target for a random crime. The evidence does not support a finding of particular vulnerability.
Deliberate Cruelty. Gratuitous violence or other conduct that inflicts physical, psychological, or emotional pain as an end in itself constitutes deliberate cruelty. State v. Serrano, 95 Wash.App. 700, 712-13, 977 P.2d 47 (1999). "The cruelty must be `of a kind not usually associated with the commission of the offense in question.'" Serrano, 95 Wash. App. at 713, 977 P.2d 47 (quoting State v. Payne, 45 Wash.App. 528, 531, 726 P.2d 997 (1986)).
The threshold for deliberate cruelty is high. See Serrano, 95 Wash.App. at 712-13, 977 P.2d 47 (shooting victim five times is not deliberate cruelty); Baird, 83 Wash.App. at 488, 922 P.2d 157 (rendering victim unconscious and mutilating her face was deliberate cruelty); Ross, 71 Wash.App. at 562, 861 P.2d 473 (defendant who inflicted more than 100 wounds acted with deliberate cruelty); State v. Falling, 50 Wash.App. 47, 55, 747 P.2d 1119 (1987) (defendant who raped victim was deliberately cruel by threatening to kill or injure victim and calling her a "bitch").
Mr. Barnett did not inflict pain "as an end in itself." Serrano, 95 Wash.App. at 712-13, 977 P.2d 47. His intent was to subdue and control herviolently and viciouslybut nonetheless control her. Mr. Barnett did threaten to kill Ms. M and her family while brandishing a knife. But his sentence already reflects these assaults and threats and includes four deadly weapon enhancements. He did not assault Ms. M to inflict pain as an end in itself.
We affirm Mr. Barnett's convictions but reverse his exceptional sentence and remand for sentencing within the standard range.
KURTZ, C.J., and BROWN, J., concur.
NOTES
[1] State v. Lopez, No. 22328-7-II, 1999 WL 753380, at *3 (Wash.Ct.App. Sept. 24, 1999), review denied, 140 Wash.2d 1008, 999 P.2d 1260 (2000); State v. Carrizalez, No. 41247-7-I, 1999 WL 294133, at *3 (Wash.Ct.App. May 10, 1999), review denied, 139 Wash.2d 1009, 994 P.2d 845 (1999).