FILED
COURT OF APPEALS
DIVISION II

2015 APR 14 AM 9: 50

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45296-1-II |
| Respondent, | |
| v. | |
| NAKIA L. OTTON, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. — Nakia Otton appeals his convictions and sentence for second degree assault and felony harassment. The convictions were based on an incident in which Otton choked and threatened to kill Debra Dugan, his girlfriend. The trial court admitted under ER 801(d)(1)(i) Dugan's written statement that she gave to police immediately after the incident, after Dugan denied at trial that Otton had assaulted or threatened her. At sentencing, the trial court imposed an exceptional sentence based on two aggravating factors: the victim's particular vulnerability and a presumptive sentence that was clearly too lenient.

We hold that (1) the trial court did not err in admitting Dugan's statement under ER 801(d)(1)(i), (2) there was sufficient evidence to establish beyond a reasonable doubt that Otton's threat to kill Dugan was a "true threat," (3) there was sufficient evidence to support the "particularly vulnerable victim" aggravating factor, (4) the trial court erred in imposing an exceptional sentence based on the "clearly too lenient" aggravating factor because the jury did not make any factual findings regarding that factor, and (5) the exceptional sentence was valid

because the trial court stated that it would have imposed Otton's exceptional sentence based on either aggravating factor.

Accordingly, we affirm Otton's convictions and exceptional sentence.

FACTS

Otton and Dugan had a romantic relationship and lived in the same residence. In October 2011, Dugan began to experience blackouts, and she ultimately underwent six brain surgeries to address bleeding in her brain. These surgeries left Dugan disabled. Dugan's disability impacted her ability to speak and caused memory problems. She also took multiple prescription medications, including seizure and thyroid medications, sleeping pills, pain killers, and anti-depressants.

On the night of December 8, 2012, Otton came home intoxicated and fell asleep on the bedroom floor. Dugan already was asleep on the bed. At some point during the night, Dugan woke up and apparently kicked Otton in the face as she moved across the room. This act angered Otton and the pair argued. Dugan reported that Otton used his arm to push her arm against her neck, pushed her against the wall, banged her head on the wall, and strangled her for about a minute. While assaulting Dugan, Otton threatened her.

Otton left the house, and Dugan called the police. The police came to the residence where they observed Dugan visibly agitated. Officer Shelton questioned Dugan, but she had difficulty discussing the assault in a logical manner. The police were required to rephrase questions or ask them again to narrow Dugan's focus to their specific questions. Dugan did tell officers that Otton had assaulted her and threatened to kill her, and that she was fearful that he would carry out the threat.

2

Once the police were able to get an accurate account of the assault, Dugan prepared a handwritten statement describing the incident. The statement provided:

> [A]pprox time 2:00 Nakia Otton came home drunk & passed out on the bedroom floor. He woke up about an hour later, accused me of kicking him in the lip. He held me on the bed, holding me by neck against the wall & the bed – I couldn't breath[e]. He told me he was gonna kill me. His mom showed up & took him out.

Br. of Appellant at 5; *see also* Report of Proceedings at 224-25. The statement form recited that Dugan was signing under penalty of perjury, and Officer Shelton advised her that the statement was made under oath. Dugan signed the statement.

Officer Shelton forwarded Dugan's written statement to the prosecutor's office along with a probable cause statement. The State charged Otton with second degree assault and felony harassment.

At trial, Dugan testified but was unable to remember much of her written statement to the police. She expressly denied stating that Otton had choked her or threatened to kill her. When questioned further, Dugan stated that she had ongoing blackouts, and she simply did not know or remember whether it had actually happened. Over Otton's objection the trial court admitted Dugan's written statement, which was inconsistent with her trial testimony, under ER 801(d)(1)(i).

The jury found Otton guilty on both charges. The jury also returned a special verdict that Otton knew or should have known that Dugan was particularly vulnerable and that Dugan's particular vulnerability was a substantial factor in the commission of the crimes. The trial court did not ask the jury to determine whether Otton's unscored misdemeanor history resulted in a presumptive sentence that was clearly too lenient.

At sentencing, Otton faced standard range sentences of 12 to 14 months for the assault and 4 to 12 months for the harassment. The trial court found that there were substantial and compelling reasons to impose an exceptional sentence based either on the victim vulnerability or the clearly too lenient aggravating factors. The court expressly stated that it would impose the same sentence even if only one of the aggravating factors was valid. The trial court sentenced Otton to 30 months in confinement.

Otton appeals his convictions and exceptional sentence.

## ANALYSIS

A. ADMISSIBILITY OF INCONSISTENT VICTIM STATEMENT

Otton challenges the trial court's admission into evidence of Dugan's prior written statement under ER 801(d)(1)(i). He argues that the "reliability" test articulated in *State v. Smith*, 97 Wn.2d 856, 863, 651 P.2d 207 (1982), is invalid after the United States Supreme Court's opinion in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We reject this argument.

Under ER 801(d)(1)(i), a court may admit statements of a witness when:

> [t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is (i) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.

If this rule applies, the statement is not hearsay and is admitted as substantive evidence of the matter asserted therein. *Smith*, 97 Wn.2d at 862-63.

In *Smith*, our Supreme Court examined the admissibility of a sworn affidavit as substantive evidence under the "other proceeding" requirement of ER 801(d)(1)(i). *Id.* at 859-63. In that case, an assault victim had named the defendant as her attacker in a sworn affidavit given to the police, but she later testified that another man had committed the assault. *Id.* at 858. The court reasoned that an interpretation of the rule that would "always exclude or always admit such affidavits" was inappropriate. *Id.* at 861. Instead, the court focused on an analysis that admitted prior inconsistent statements where "reliability [is] the key." *Id.* at 863. Using this approach, the court concluded that a sworn statement to police may qualify as an "other proceeding" under ER 801(d)(1)(i). *Id.*

Subsequent case law set forth four criteria to be examined in determining whether a prior inconsistent statement was made in an "other proceeding." These are:

> (1) whether the witness voluntarily made the statement, (2) whether there were minimal guaranties of truthfulness, (3) whether the statement was taken as standard procedure in one of the four legally permissible methods for determining the existence of probable cause, and (4) whether the witness was subject to cross examination when giving the subsequent inconsistent statement.

*State v. Thach*, 126 Wn. App. 297, 308, 106 P.3d 782 (2005).

Otton contends this analysis is not an appropriate test for Washington courts to discern a prior inconsistent statement's reliability under ER 801(d)(1)(i) after the United States Supreme Court's decision in *Crawford*. In *Crawford*, the Court examined the admissibility of out-of-court testimonial statements under the Sixth Amendment's confrontation clause. 541 U.S. at 69. The

Court determined that when out-of-court testimonial statements were at issue, the only way to ensure the reliability of the statement is an in-court confrontation of the witness. *Id.* Accordingly, the Court held that out-of-court testimonial statements were inadmissible unless the defendant had a prior opportunity to cross-examine the out-of-court speaker. *Id.* at 68-69.

We addressed Otton's exact argument in *Thach*, 126 Wn. App. 297. In that case, the defendant argued that *Crawford* impacted the admissibility of a prior inconsistent statement under ER 801(d)(1)(i). *Id.* at 309. We held that *Crawford* had no bearing on the admissibility of the statement under ER 801(d)(1)(i) because "the confrontation clause is not implicated when the declarant is available for cross-examination at trial." *Id.* The Court in *Crawford* also recognized this distinction: "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." 541 U.S. at 59 n.9.[1]

We follow *Thach* and conclude that Otton's challenge to the validity of *Smith* has no merit. Therefore, we hold that Dugan's statement was properly admitted as substantive evidence under ER 801(d)(1)(i).

---

[1] Otton also contends that a Florida Court of Appeals case, *Delgado-Santos v. State*, 471 So. 2d 74, 79 (Fla. Ct. App. 1985), should persuade us to overturn *Smith*. In *Delgado-Santos*, the Florida Court of Appeals held that police questioning was not an "other proceeding" for the purpose of ER 801(d)(1)(i). *Id.* There the court reasoned that "the basic flaw" with *Smith*'s admissibility of a reliable sworn statement was "that it finds no basis in the statute." *Id.* Here we base our decision on Washington jurisprudence, which has continually upheld or approvingly cited to *Smith* after *Delgado-Santos*. *See, e.g., State v. Lavaris*, 106 Wn.2d 340, 343, 721 P.2d 515 (1986); *Thach*, 126 Wn. App. at 308.

B.  TRUE THREAT REQUIREMENT

Otton argues that that his felony harassment conviction must be reversed because the State failed to produce sufficient evidence that his threat to kill Dugan was a "true threat," which is a required finding for a felony harassment conviction. We disagree.

1.  Legal Principles

Under RCW 9A.46.020(1)(a)(i), a person is guilty of harassment if, without lawful authority, that person "knowingly threatens . . . [t]o cause bodily injury immediately or in the future to the person threatened or to any other person." However, the First Amendment to the United States Constitution prohibits laws that abridge the freedom of speech. Because RCW 9A.46.020(1)(a) criminalizes pure speech, that statute must be applied in conformance with the First Amendment's command. *State v. Kilburn*, 151 Wn.2d 36, 41, 84 P.3d 1215 (2004).

Significantly, the scope of the First Amendment does not extend to "unprotected speech," one category of which is "true threats." *State v. Allen*, 176 Wn.2d 611, 626, 294 P.3d 679 (2013). A true threat is " 'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of another person.' " *Id.* (internal quotation marks omitted) (quoting *Kilburn*, 151 Wn.2d at 43). We "interpret statutes criminalizing threatening language as proscribing only unprotected true threats." *Allen*, 176 Wn.2d at 626.

A statement can constitute a true threat even if the speaker has no actual intent to cause bodily injury. *Kilburn*, 151 Wn.2d at 46. One of the reasons that a true threat is unprotected speech is because it arouses fear in the person threatened and that fear does not depend on the speaker's intent. *Id.* Therefore, a statement will be considered a true threat if a "reasonable speaker would foresee that the threat would be considered serious." *State v. Schaler*, 169 Wn.2d 274, 283, 236 P.3d 858 (2010).

2. Standard of Review

Otton challenges the sufficiency of the evidence that he made a true threat. In the ordinary case, the test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the fact at issue beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In evaluating a sufficiency of the evidence claim, we assume the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. We defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Id.*

However, because the true threat requirement implicates the First Amendment, applying the usual analysis for assessing sufficiency of the evidence is not enough. *Kilburn*, 151 Wn.2d at 49. "The First Amendment demands more." *Id.* Instead, we must engage in an independent review of the "crucial" facts that involve the legal determination of whether the speech is unprotected. *Id.* at 52.

### 3. True Threat Analysis

The evidence shows that Otton expressly threatened to kill Dugan. The question here is whether there is sufficient evidence that this threat was made in a context or under such circumstances that a reasonable person would foresee that it would be interpreted as a serious expression of intention to harm Dugan. *Allen*, 176 Wn.2d at 626.

Under this standard, the context of the threat is significant. *Id.* Here, the context of Otton's threat to kill Dugan supports the finding of a true threat. Otton threatened to kill Dugan after he used his arm to push her arm against her neck, pushed her against the wall and banged her head on the wall, and strangled her. A reasonable person certainly would foresee that a threat to kill during such an assault could be interpreted as a true threat to kill.

Based on our independent review of the crucial facts, we hold that there was sufficient evidence to establish beyond a reasonable doubt that Otton's threat to kill Dugan was a "true threat" because it was reasonably foreseeable that a reasonable person would take the threat seriously.

### C. EXCEPTIONAL SENTENCE

Otton argues that the trial court erred by imposing an exceptional sentence because (1) insufficient evidence supported the jury's findings on the "particularly vulnerable victim" aggravating factor, and (2) the jury did not make any findings regarding the "clearly too lenient" aggravating factor. We hold that there was sufficient evidence to support the jury's verdict on the particularly vulnerable victim aggravating factor but that the clearly too lenient aggravating factor was invalid. However, we affirm the exceptional sentence because the trial court

9

expressly stated that it would impose the same exceptional sentence even if only one of the aggravating factors was valid.

    1.   Particularly Vulnerable Victim Aggravating Factor

Former RCW 9.94A.535(3)(b) (2011)[2] allows a sentencing court to impose an exceptional sentence based on a jury finding that the "defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance." To prove a victim's vulnerability as an aggravating factor justifying an exceptional sentence, the State must show that (1) the defendant knew or should have known (2) of the victim's particular vulnerability and (3) that vulnerability was a substantial factor in the commission of the crime. *State v. Suleiman,* 158 Wn.2d 280, 291-92, 143 P.3d 795 (2006) (emphasis omitted). To be a substantial factor, a disability must have rendered the victim more vulnerable to the particular crime than a nondisabled person. *State v. Mitchell*, 149 Wn. App. 716, 724, 205 P.3d 920 (2009).

The jury returned a special verdict that Otton knew or should have known that Dugan was particularly vulnerable or incapable of resistance and that Dugan's particular vulnerability or incapability to resist was a substantial factor in the commission of the crimes. These are factual determinations that we review under a sufficiency of the evidence standard. *See Suleiman*, 158 Wn.2d at 292. The test for determining whether evidence is sufficient to support a jury's finding of aggravating circumstances is whether, after viewing the evidence in the light most favorable

---

[2] RCW 9.94A.535 was amended three times in 2013, but these amendments do not affect the subsection cited.

to the State, any rational trier of fact could have made that finding beyond a reasonable doubt. *State v. Gordon*, 172 Wn.2d 671, 680, 260 P.3d 884 (2011).

Here, it is undisputed that Dugan was disabled because of her brain surgeries and that her disability affected her speaking ability and her memory. In addition, Dugan was taking several medications.

Otton argues that Dugan's disability could not be a substantial factor in the commission of the crimes because there was no nexus between the *cause* of the crimes and the disability. He argues that the incident arose because of an argument between romantic partners and not because Dugan was disabled. But Otton's argument misinterprets the substantial factor requirement. He argues that a victim's particular vulnerability must have triggered or been the cause of the crime. But as evidenced by the plain language of the third factor in *Suleiman*, a victim's vulnerability must merely be a substantial factor – not the *cause* – of the commission of the crime. 158 Wn.2d at 291-92.

*Gordon*, 172 Wn.2d 671, illustrates the distinction between the cause of a crime and a substantial factor in the commission of a crime. In that case, the defendant began punching the victim when the victim intervened in a fight between the defendant and a woman. *Id.* at 674. When the victim fell to the ground, the defendant and his four friends continued to punch and kick him. *Id.* The court held that a jury could reasonably conclude that the victim's vulnerability – being a solitary victim who was assaulted by multiple assailants – was a substantial factor in the commission of the crime. *Id.* at 680. Significantly, there was no indication that the fact that the victim was outnumbered was the initial *cause* of the crime. The cause was the victim confronting the defendant.

11

Otton relies on *State v. Barnett*, 104 Wn. App. 191, 16 P.3d 74 (2001). In that case, the defendant viciously attacked his 17-year-old girlfriend. *Id.* at 195. The trial court imposed an exceptional sentence based in part on a finding that the victim's age and the fact that she was home alone made her particularly vulnerable. *Id.* at 202. Division Three of this court held that the evidence did not support the finding of particular vulnerability. *Id.* at 204-05.

Otton focuses on the court's statements that the fact that the victim was home alone was not the reason the defendant chose her as a victim, and he emphasized the court's statement that the defendant chose his victim "because of their failed relationship, not because she presented an easy target for a random crime." *Id.* at 205. However, before making those statements, the court specifically stated that the victim was not particularly vulnerable. *Id.* at 204. In other words, the court in *Barnett* based its decision on the fact that the victim was not particularly vulnerable, not that the vulnerability did not cause the offense. As a result, *Barnett* does not support Otton's argument.

Here, the evidence showed that Dugan's disability impacted her ability to speak, as well as her memory and perception, and required her to take multiple kinds of prescription medications. Dugan had difficulty telling the police her account of the assault directly after it took place as well as giving a chronological and focused account of the attack. Moreover, Dugan testified that her blackouts impacted her ability to remember whether the attack had taken place. Based on this evidence, the jury could have reasonably concluded beyond a reasonable doubt that Dugan was more vulnerable to the commission of an attack than a nondisabled person because Dugan's disability prevented her from fully remembering and reporting the assault.

12

Further, the jury could have inferred that Otton's knowledge of Dugan's disability was a substantial factor in his assault on her. The jury could have inferred that Otton assaulted Dugan in part because he knew she would have difficulty describing the attack and would make a poor witness in any subsequent prosecution.

We hold that there was sufficient evidence for the jury to reasonably conclude beyond a reasonable doubt that Dugan's disability was a substantial factor in the commission of Otton's assault.

2. Clearly Too Lenient Aggravating Factor

Former RCW 9.94A.535(2)(b) allows a sentencing court to impose an exceptional sentence without a finding of fact by a jury based on an aggravating factor that a defendant's prior unscored misdemeanor history results in a presumptive sentence that is clearly too lenient. Notwithstanding the statutory language, Otton argues – and the State concedes – that the trial court's application of this aggravating factor must be based on the jury's findings.

Any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. *State v. Alvarado*, 164 Wn.2d 556, 563, 192 P.3d 345 (2008); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). This holding is based on the Sixth Amendment right to trial by jury. U.S. CONST. amend. VI. Whether an exceptional sentence violates the Sixth Amendment is a question of law that we review de novo. *State v. Saltz*, 137 Wn. App. 576, 580, 154 P.3d 282 (2007).

13

Here, unlike for the particularly vulnerable victim aggravating factor, the jury made no findings regarding the clearly too lenient aggravating factor. As a result, we accept the State's concession and hold that the trial court could not impose an exceptional sentence based on this aggravating factor.

3. Exceptional Sentence Based on One Valid and One Invalid Factor

Because there is sufficient evidence to support the particularly vulnerable victim aggravating factor, we must determine whether we can uphold the trial court's exceptional sentence based only on that factor. "Where the reviewing court overturns one or more aggravating factors but is satisfied that the trial court would have imposed the same sentence based upon a factor or factors that are upheld, it may uphold the exceptional sentence rather than remanding for resentencing." *State v. Jackson*, 150 Wn.2d 251, 276, 76 P.3d 217 (2003). This rule is particularly appropriate when the trial court expressly states that the same exceptional sentence would be imposed based on any one of the aggravating factors standing alone. *See State v. Nysta*, 168 Wn. App. 30, 54, 275 P.3d 1162 (2012).

Here, the trial court expressly stated that it would have imposed Otton's exceptional sentence based on either aggravating factor. Therefore, we uphold the trial court's exceptional sentence.

14

45296-1-II

We affirm Otton's convictions and exceptional sentence.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

MELNICK, J.

15